## UNITED STATES v. HAIRSTON.
### No. 9282.

Circuit Court of Appeals, Eighth Circuit.
Jan. 18, 1932.

W. N. Ivie, U. S. Atty., of Fort Smith, Ark. (Cleveland Cabler, Regional Atty., Veterans' Bureau, of Little Rock, Ark., and G. T. Sullins, Asst. U. S. Atty., of Fort Smith, Ark., on the brief), for the United States.

W. R. Donham and W. W. Shepherd, both of Little Rock, Ark., for appellee.

Before KENYON, VAN VALKENBURGH, and GARDNER, Circuit Judges.

KENYON, Circuit Judge.

This is an appeal from a judgment entered by the District Court in a suit upon a war risk insurance policy issued to appellee, Hairston. A motion to dismiss is made because of appellants not complying with section 1, rule 14 of this court, which is as follows: "When an appeal is allowed a citation to the appellee or appellees shall be signed by the judge or justice allowing the appeal, and shall be made returnable at St. Louis, Mo., not exceeding 40 days from the day of allowance of appeal, whether the return day fall in vacation or in term time, and the citation must be served 20 days before the return day."

■ The judgment was entered February 11, 1931. Appeal was allowed on May 5, 1931. Citation was dated and signed July 28, 1931, and served August 8, 1931. There is apparently a technical violation of this rule. While the rule is made with the expectation that it will be obeyed, its violation does not destroy the jurisdiction of this court. The rule is jurisdictional as to an appellee, and its purpose is to give such appellee proper notice as to the appeal. It is apparent there is no prejudice to appellee here by the delay in the citation. We therefore deny the motion. Lockman v. Lang et al. (C. C. A.) 132 F. 1; Sutherland et al. v. Pearce (C. C. A.) 186 F. 783. At the close of the evidence, the defendant, appellant here, moved the court to instruct the jury to return a verdict for it on the ground that no substantial evidence had been offered to show that plaintiff (appellee) was totally and permanently disabled, within the meaning of the law, during the time the policy sued on was in force. This was overruled by the court, and the case was submitted to the jury. A verdict was returned for plaintiff.

■■ There is only one question for us, viz.: Should the trial court have sustained the motion for an instructed verdict on the ground of insufficiency of the evidence to show total and permanent disability during the time the policy was in force? "Total disability," as used in these War Risk Insurance Policy cases, means such impairment of mind or body as to permanently make impossible the following continuously of any gainful occupation. The fact that an insured under these policies does some work is not sufficient to prove he is able to carry on a gainful occupation for any particular period of time, nor does the fact that he may not work demonstrate that he is unable to carry on such occupation. The test is the ability to carry on such gainful occupation continuously.

■ Appellee enlisted in the military service of the United States on the 18th day of September, 1917; was honorably discharged on May 20, 1919. When in the army he was granted war risk insurance, payable to him in the event of his becoming totally and permanently disabled during the life of the in-

surance contract. Premiums were paid on the policy up to and including May, 1919. It is conceded that the grace period carried the insurance in force until midnight July 1, 1919.

The testimony shows that the insured had bowel trouble while in the army; that he contracted dysentery; had much running off of the bowels. His discharge certificate showed his physical condition to be good. In his declaration as to physical condition prior to his separation from service he answered a question as to his suffering from any disease or having any impairment of health that he did not. His commanding officer certified that he had no reason to believe that the soldier had any disease at time of discharge. The examining surgeon gave the following certificate:

"I Certify That:

"The soldier named above has this date been given a careful physical examination, and it is found that he is physically and mentally sound.

"In view of occupation he is 0 per cent disabled.

"[Sgd.]   M. Dowday,
"Capt. M. C., U. S. Army.

"Place and date: Camp Pike, Ark. May 16, 1919."

In a letter of October 21, 1922, to the War Department, insured states that at time of discharge from the army he "did feel alright"; that he had taken treatments for tapeworm.

Appellee testified as to his statement, made at time of discharge: "I also signed a copy of the discharge, which I have introduced, that stated I was in good health, that that is what it states, but I did not tell them my physical condition was good, I wasn't asked whether it was good or bad."

He testified that at time of discharge he had this bowel trouble and went to his mother's home; was unable to do any work and did not try to; that he has been in three government hospitals at twelve different times; that he did some work barbering, and worked in 1920 for the American Express Company at Fort Worth for seven weeks, but quit as he was not able to do the work; tried to work in an automobile paint shop; was compelled to go to the toilet on an average of six or eight times a day; did some light farm work for his uncle; has had no sickness outside of the dysentery and chronic bowel trouble; has been troubled with vomiting spells; has made about $300 since his discharge; has depended largely on relatives; his compensation from the government is $40 per month.

The Veterans' Bureau in 1924 took him out of the training course on the ground that he was nonfeasible for further training. After that he was sent to a hospital at Muskogee, Okl. He made other attempts to be put back in training and was put back in October, 1924; but on account of dysentery was unable to regularly attend classes, and he was taken out of training.

According to insured's evidence, he has done very little work since his discharge. His mother's and uncle's testimony is also to the same effect.

This suit was commenced May 25, 1929, some ten years after his discharge.

In a case of this character, medical testimony, while of course not conclusive, is important. It would be expected if insured were totally disabled before July 1, 1919, the doctors introduced by him as witnesses would so state. What is the record on this?

Dr. Garner testified as a witness for the plaintiff. He had known insured since 1912; saw him after discharge in barber shop and thought him very nervous; also was called to see him in January, 1922, in consultation with Dr. Paul; he testifies that at that time insured was suffering from dysentery; that he did not treat him; that he was not qualified to do manual labor; didn't know what he was able to do in 1919, 1920, and 1921.

Dr. Mendenhall testified that he saw insured in latter part of 1921 or first part of 1922; also said he came to see him at his office account of dysentery; made no examination; just questioned him and figured that he had chronic dysentery. He did not at any time go into the case sufficiently to determine whether there was any cancerous condition. Speaking of his condition, he said: "I would not attempt to say that it was permanent, because I didn't get to see him more. That is a pretty long time for that to last."

This is the nearest any doctor comes to even hinting that the disability of insured might be permanent. There is absolutely no medical evidence that the dysentery produced total disability. If it did for any period of time there is nothing to show it was permanent. It is probably true that any one with dysentery suffers some disability, but such is seldom lasting or total.

The government introduced two medical witnesses:

Dr. Corney, regional medical officer in the United States Veterans' Bureau at Little Rock, testified as to insured's ratings by the rating board; that July 3, 1928, a rating of temporary partial disability of 50 per cent. was fixed; no rating was assigned for insurance. He said: "We did not consider him sufficiently disabled for drawing insurance." Said would not give over 40 per cent. rating if making it at time he testified.

Dr. Smiley testified he was connected with the Veterans' Bureau in 1922 as medical examiner; that insured at the time he made an examination of him in February, 1922, stated that after his discharge he worked on a farm during the remainder of 1919; that in 1920 he lost no time account of sickness; had no medical treatment in 1922, and worked for day wages on the farm, but has been sick off and on since; that he had been troubled with diarrhea since 1921. All of this was denied by appellee.

It seems to us there is an absolute absence of any substantial evidence to show insured was totally and permanently disabled on or before July 1, 1919. His own evidence does not show it; the lack of any medical evidence to establish it is significant. He was found by an examination in May, 1919, to be physically and mentally sound. Appellee's judgment is based on mere surmise and guess. He is not under the law entitled thereto. Blair v. United States (C. C. A.) 47 F. (2d) 109; United States v. Le Duc (C. C. A.) 48 F.(2d) 789; Nicolay v. United States (C. C. A.) 51 F.(2d) 170.

While courts are liberal in construing these insurance policies and resolve doubts in favor of the insured, it must not be lost sight of that the liability is one arising on a contract, and that these policies are not gratuities. This case is bereft of any medical testimony or in fact any substantial testimony to sustain a claim of total and permanent disability. If appellee had conceived himself to be totally and permanently disabled in 1919, he would hardly have waited until 1929 to bring action on the policy. The case apparently is an afterthought, and to us seems one of the weakest of all the cases presented for recovery on these war risk insurance policies.

The motion for an instructed verdict for the defendant should have been sustained.

Reversed and remanded.