### UNITED STATES v. HILL.
#### No. 6805.

Circuit Court of Appeals, Ninth Circuit.
Nov. 21, 1932.

George Neuner, U. S. Atty., and Rex Kimmell, Asst. U. S. Atty., both of Portland, Or.

Allan A. Bynon, of Portland, Or., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

From a judgment after alleged erroneous denial of a motion for a directed verdict on the ground that the evidence was insufficient to sustain a verdict, appellant appeals.

The appellee was enlisted in the army in September, 1917, and thereafter received a $10,000 war-risk insurance policy and was

discharged on the 4th day of April, 1919, claiming total and permanent disability prior thereto. No premiums were paid on the policy after discharge.

The burden of proof was upon the appellee to show by a fair preponderance of the evidence that he was thus totally and permanently disabled. Partial disability is not sufficient, nor total temporary disability. United States v. Golden (C. C. A.) 34 F.(2d) 367; United States v. Thomas (C. C. A.) 53 F.(2d) 192; United States v. McLaughlin (C. C. A.) 53 F.(2d) 450. And unless there is substantial testimony to sustain the verdict, denial of the motion was error. Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720.

The action was begun on the 14th day of October, 1930. The testimony of total and permanent disability was by the plaintiff. He testified that while "at the front line I had dysentery, high fever and a kind of a nervous breakdown." The dysentery followed drinking water from a water hole in the Saint Mihiel sector. "I became violently sick at my stomach a couple of hours after, and after that I contracted a bad case of dysentery which lasted about six weeks."

At separation from service he responded to the question: "Have you any reason to believe that at the present time you are suffering from the effects of any wound, injury, or disease, or that you have any disability or impairment of health, whether or not incurred in the military service?" Answer: "No."

Upon trial he stated that he had influenza and was laid up about two weeks, "at the time I was discharged I was suffering from nervousness, stomach trouble, and I had a bad chest condition. I didn't have any more dysentery for quite a while after I was discharged. I would say it came back in '26. I had a hemorrhage a few years later. Doctors at the hospital where I was told me it came from the effects of the dysentery I had previously." That he had a fever all the time. "I used to have awful night sweats at night. I coughed a whole lot, and expectorated; lots of times my sputum was tinged with blood." Asked: "Where was the first place you started taking treatments after you got out of service?" Answer: "I never have taken any treatments. I just went to Arizona. They told me that was the only place I could be cured." To which place he went in 1925. He says: "I saw Dr. Hyatt after I got out of service. He was located at Herkemer, New York. (This was his physician be-

fore entering the army.) I did not get any treatment under Dr. Hyatt." He testifies that he worked in various places: Studebaker Automobile Company for about two months, and stopped because there was too much smoke; Dodge Automobile Company for two weeks, quit because there was too much smoke; Ford Automobile Company for about ten weeks, stopped because the work was too hard; Cadillac Automobile Company for about six weeks, quit because of too much smoke and gas; worked in the woods in Northern New York for about a month, stopped because the work was too hard, and at this place he felt better. Then went to Arizona.

Beyond a period of about thirty weeks, there is no evidence what the plaintiff did, or his condition. At Arizona, in November, 1926, plaintiff was examined by a chest specialist, who said he found plaintiff suffering from a "mild bronchitis"; there was no evidence of tuberculosis; and that the prognosis as a result of examination was good. He also stated: "There was nothing in that examination that would indicate that he might have been or could have been totally and permanently disabled prior to that time." A general practitioner testified his "examination covered all the complaints except lungs. * * * There is nothing given here in any active nature except hypertrophied tonsils bi-lateral with enlarged lymph glands in the neck that were nonsupporting, and a slight chronic eczema on the toes of both feet. Otherwise the examination is entirely negative. * * * My prognosis was favorable, good. * * * This man was not totally or permanently disabled at the time of my examination."

The plaintiff testified that he was first in a hospital at Detroit; next in Great Lakes, Ill.; examined in Indianapolis, Ind.; in Philadelphia, Pa.; University Hospital, Okl. "I had several examinations in Arizona—Phoenix." "I have been examined at Letterman's. Dr. Read examined me the last time I was examined. There were four doctors altogether examined me, looked at me through the fluoroscope. A diagnosis of pulmonary tuberculosis was made. That was after I went to Phoenix, Arizona."

Lay witnesses testified that plaintiff complained of his stomach; they had known him since 1929, about two years, were next door neighbors; that Hill was high strung, nervous, "if he gets his mind set on any one thing or tells you about something, one particular thing—pretty soon he gets so loud

you can hear him a block away." One witness further stated: "I have come home twelve, one or two o'clock, and see a light. I would drop in, and Mr. Hill was complaining he couldn't sleep. I tried to sympathize with him different ways; I felt sorry for him."

There is no evidence of any infectious disease or organic impairment. The dysentery had disappeared at discharge and did not return until 1926. He was examined by his physician almost immediately after discharge from the army, and the testimony of the doctor as to his physical condition is not produced; he was examined by a number of physicians in Arizona; the testimony of none of these physicians is before the court. He was examined in various hospitals enumerated by him in his testimony, and there is an absolute dearth of testimony of any mental and/or physical fact with relation to the plaintiff's condition prior to 1929, and from persons then who merely testified as to his complaints and restlessness during some nights. His statement as to the statements by the physicians at Phoenix that he had tuberculosis is clearly hearsay and should have been stricken, and when voluntarily made is not substantial evidence, and may not be considered for any purpose. At any rate, there is no evidence as to the inception of the tuberculosis, or of its continuance or probability of its continuance; nor evidence of its presence now.

The "chest condition" complained of at discharge is shown by the specialists to be "mild bronchitis." There is not a scintilla of evidence that there is even any possibility of total and permanent disability. The dysentery was temporary and did not recur until seven years later, 1925; the nervous condition which exhibited loud speaking when in earnest argument "so you could hear him a block away" is not evidence of total and permanent disability ten years previously, nor is the fact of sleeplessness so far removed from the discharge.

Nonemployment, of itself, is not evidence of impairment. And it is obvious that facts known or within the *power* of the plaintiff to produce are not presented. See Massey v. United States (D. C.) 46 F.(2d) 78; Third Nat. Bank & Trust Co. v. United States (C. C. A.) 53 F.(2d) 599. Nor is smoke, as shown, causing cessation of work, or that the work was too hard, evidence of total and permanent impairment. Nor is voluntary cessation of special work, rather than compulsory cessation by reason of physical and/or mental inability to work, of itself, evidence of total and permanent disability.

This case is clearly distinguished from United States v. Lesher (C. C. A.) 59 F.(2d) 53. There is no evidence which raises a dispute about which reasonable men might honestly differ. Day v. Donohue, 62 N. J. Law, 380, 41 A. 934. No competent evidence of relevant consequence, clear, certain, carrying the quality of proof, having the fitness to produce conviction in the minds of reasonable persons, such that reasonable persons may fairly differ as to whether or not it proves the fact in issue. Milford Copper Co. v. Industrial Comm., 61 Utah, 37, 210 P. 993.

We appreciate that the court may not look behind the finding of the jury predicated upon substantial evidence and when it is a matter of weighing the evidence, which is the sole province of the jury; but when the challenge is want of substantial evidence, the power of the court must be asserted as a matter of law.

The judgment is reversed and remanded.