## ANDREWS v. UNITED STATES.
### No. 9469.

Circuit Court of Appeals, Eighth Circuit.
Jan. 14, 1933.

N. F. Lamb and Arthur L. Adams, both of Jonesboro, Ark., for appellant.

J. A. Tellier, Sp. Asst. to U. S. Atty., of Little Rock, Ark. (Wallace Townsend, U. S. Atty., and Edward S. Ragsdale, Insurance Atty., Veterans' Administration, both of Little Rock, Ark., on the brief), for the United States.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

Appellant, plaintiff in the trial court, brought this action to recover $10,000 from the United States on a war risk insurance policy. The trial court directed a verdict for defendant.

The existence of a disagreement under section 445, title 38 USCA, is admitted by the government.

The sole proposition before us is whether there was substantial evidence with the legitimate inferences that might fairly arise therefrom upon which to base a verdict for appellant, considering the evidence and such inferences in the most favorable light for appellant's cause. McNally et al. v. United States (C. C. A. 8) 52 F.(2d) 440; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720.

We have in United States v. Cornell (C. C. A.) 63 F.(2d) 180 (opinion this day filed) referred to the legal principles involved in this class of cases, and we shall not discuss them here.

Appellant entered the army in July, 1918; was honorably discharged from military service in February, 1919. Premiums had been paid on the policy in suit sufficient to keep it in force to March 31, 1919.

Appellant's theory is that he was afflicted with tuberculosis resulting from a severe attack of the measles before the time the policy would lapse, and was totally disabled. The evidence shows that while in the service in France he contracted measles and was sent to the camp hospital, where he remained some nineteen days; that he coughed and spit blood; had fever and chills. He was in another hospital for a brief time in the tubercular ward. After his discharge from the hospital he was not considered able to do active duty, and was returned to the United States in February, 1919; was at different camps, and finally discharged from the service at Camp Pike, Ark., February 25, 1919. His discharge papers indicated that his physical condition was good at that time, although he testified his weight had gone down from 165 pounds, when he enlisted, to 133 pounds when discharged, and that he was coughing and occasionally spitting up blood. We quote from his testimony:

"Q. Were you asked this question and did you make the following answer on the 22nd of February, 1919, which was a day or two before you were discharged, wasn't it? A. Yes.

"Q. Declaration of soldier: Question: Have you any reason to believe that at the present time you are suffering from the effects of any (would), injury or disease, or that you have any disability or impairment of health, whether or not incurred in the military service? Answer: No."

After his discharge he followed the occupation of barber for about two months, and also clerked in a store from February 26, 1919, to February 19, 1920. As a barber he earned from $2 to $2.50 per day, but was too nervous to continue as a barber. He left the American Express Company, where he was employed, because he could not do the heavy work. He worked in his father's café from September 1, 1920, until March 1, 1921; broke down, and then filed his claim for compensation, for which he received his first rating in October, 1922, which was $8 per month until he entered the hospital, and $80 while in the hospital. His compensation rating in June, 1930, indicated temporary total disability. Altogether he has received up to the time of trial $9,767.34 compensation. He was in a hospital at Houston for about five months in 1921, and from May 15, 1922, to June, 1923, being treated for tuberculosis. Appellant was married January 18, 1923, and at the time of the trial had three children. He testified he did not work continuously at any time after his discharge.

The evidence beside his own was that of three doctors. We refer to the testimony of each.

Dr. McAdams testified that he saw appellant two or three days after he returned to Bowman, Ark., from the army, and a few days thereafter examined him and told him he thought he had tuberculosis, and he saw him occasionally during that year. He testified as to hyperactivity of his thyroid, which is frequently a complication of tuberculosis. He stated he did not think from his first examination that appellant was able to follow continuously any substantially gainful occupation without injury to his health, and that he should have been in bed at that time. He did not see or examine him from that time until October, 1931, a period of twelve years. At the last examination he found an active tubercular infection of his chest, and some dilitation of the heart. He testified appellant's condition would continue throughout his life. From his cross-examination we quote:

"Q. Doctor, the testimony which you have given in regard to tuberculosis is based on your recent examination, October 31, 1931? A. Yes, sir.

"Q. And you are relating your conclusions back to the critical date of March 31, 1919, from the facts you have obtained from this recent examination? A. Yes, sir.

"Q. And you state it is tuberculosis? A. Yes.

"Q. The fact that you find he is disabled from tuberculosis now, you are relating that back to his discharge? A. Yes, sir.

"Q. And basing it exclusively on tuberculosis? A. I did examine him at one time when he had a very active thyroid that added a great deal to his discomfort. That, within itself, would have, at that time, rendered him permanently and totally disabled over a period."

There was introduced in evidence a letter from him as follows:

"Dr. Homer Stroud
"Dr. Herbert H. McAdams
"Jonesboro, Arkansas.

"523–108
"Allie Eldon Andrews
"Pvt. 13th Co. 4th Rec. Bks.
"June 27, 1921.

"To Whom It May Concern:

"This Is To Certify That I am personally well acquainted with Allie Eldon Andrews who is now in the U. S. P. H. S. Hospital No. 25 Houston, Texas; that I saw him numerous times in the spring of 1919, at which time he complained of a rapid heart and slight dyspnoea. I remarked several times to him that he looked bad and should have medical attention, but he never came to me for treatment.

"Respectfully submitted,
"H. H. McAdams, M. D."

A statement of Dr. McAdams of December 15, 1922, at the time appellant presented a claim for compensation, was introduced. It is as follows:

"Questionnaire for Attending Physician.

"In connection with claim for compensation or vocational training of Allie Andrews, or who was formerly a member of Pvt. 13-Co. 4th Rec. Bks., and who resides at Jonesboro, Ark. Home, now at U. S. V. Hospital, Houston, Tex. answers are true and correct to the best of my knowledge and belief:

"1. On what date did you first examine claimant? Was in office about Oct. 10-1919 Complained of Rapid Heart, Nervousness and shortness of Breath, and choking sensation about throat.

"2. What were the physical findings disclosed by such examination?

"Judging from the objective syndrome of symptoms he had a Hyper throidism.

"3. What was your diagnosis? None was made But Opinion formed upon statement of patient and Rapid Heart.

"4. If laboratory tests were made, what were results?

"None.

"(By pencil and stamp. /This is Reporter's note/)

"File. Considered by rating board 12/15/25 D-D D

"5. Did you render him treatment? No. If so, give dates treatment was given. None. (Stamp) Received December 14, 1922, Office of Manager U. S. Veterans' Bureau District Fourteen, Dallas, Texas.

"H. H. McAdams,
"(Physician's Signature)
"Jonesboro, Ark.
"(Address)"

It is to be observed that nothing is herein said about any tuberculosis.

He explained this by stating that he understood the purpose of the statement was to help Andrews secure compensation on his thyroid trouble, while the fact was that compensation was sought on the basis of tuberculosis. Dr. McAdams' testimony is the strongest introduced in appellant's behalf, and would be, in connection with the other evidence and circumstances, sufficient to warrant a jury in finding total and permanent disability from tuberculosis at the time of the trial in 1931; but there is not enough of substance in it to sustain a claim of total disability in March, 1919. Surely if Dr. McAdams thought plaintiff had any serious tubercular trouble in 1921 he would have so stated in his letter of June 27, 1921, which we have heretofore set out, and in his statement of December 15, 1922, made to assist appellant in securing compensation. But no word appears in either as to tuberculosis.

Another witness was Dr. Altman, who testified that he examined appellant in 1925, and that in his opinion he then had tuberculosis; that tuberculosis frequently follows a severe case of measles. Dr. Altman was asked a hypothetical question setting forth the symptoms Andrews had exhibited, and he answered, "That would indicate some chest disease. Those symptoms would suggest tuberculosis more than any other known disease." From the history of the case he found that tuberculosis had existed since 1919, and testified that a person with active tuberculosis cannot without injury to his health follow a gainful occupation. We quote from his direct examination:

"Q. Dr. Altman, if it should be true that Mr. Andrews has been suffering from active tuberculosis since his discharge in 1919, accompanied by the symptoms which I have already detailed to you, and is still afflicted, state whether or not, in your opinion, it might be reasonably expected he will in the future be able to engage in some substantially gainful occupation. A. Well, nobody can foresee the future, but we judge our experience with experience with other cases, and it is our experience that people that have had tuberculosis break down easily after that long."

Of course the foregoing question assumes active tuberculosis in 1919, which the record fails to disclose. Dr. Altman could not state as a fact that appellant was permanently and totally disabled on March 31, 1919. We quote from his cross-examination:

"Q. And you wouldn't be able to state, as a fact, of course, whether on that date he was permanently and totally disabled? A. No, sir.

"Q. Now the fact that he did have, as you diagnosed it, tuberculosis in 1925, does by no means spell tuberculosis five or six years prior to that date? A. No; except by the history.

"Q. And that history you take from the patient? A. Yes.

"Q. And as that history is true or untrue the conclusion is good or bad? A. Yes."

Again, from his cross-examination:

"Q. Well, Doctor, the most you can say to help us solve this question, from your examination in 1925, relating that condition back to 1919, you are of the opinion the man had tuberculosis? A. Yes, that is as strong as I could go.

"Q. And if there are intervening factors that would negative everything that has been said about temperatures, etc., you would have to reach a different conclusion? A. Yes."

On the 3d of January, 1925, the witness made this statement in writing for the purpose of assisting appellant in securing compensation:

"J. T. Altman, M. D. Jonesboro, Ark.

Jan. 3, 1925.

"To Whom It May Concern:

"This is to certify that I have this day examined Allie E. Andrews and find he has considerable trouble in the posterior part of lower lobe of left lung. Also has fewer rales in upper part of right lung. Heart is slightly enlarged. I think he (———) to have hospital examination to ascertain the activity of the disease.

"Respt.

"J. T. Altman."

He would not state that appellant had active tuberculosis even in 1925. The most he had was a suspicion of tuberculosis, and when the letter was written he had not made up his mind as to whether appellant had active tuberculosis. It appears that at the time of the examination in January, 1925, the degree of disability was so slight in the doctor's judgment that it was necessary to have a hospital examination to ascertain the activity of the tuberculosis.

Dr. Stroud's evidence is no stronger. He had never examined appellant, and in answer to a hypothetical question stated that he judged appellant probably had some lung condition; that was his suspicion. We quote from his cross-examination:

"Q. Without any intervening knowledge, just from the examination of a patient at this time, would any reputable physician be able to determine whether the patient had tuberculosis then by reason of the fact that it is found present now? A. No, sir; only by the history.

"Q. Now, on the accuracy of that history, and on the truthfulness of that history would depend the value of the conclusion? A. Yes, sir."

The substance of the medical testimony is that appellant probably had incipient tuberculosis during the life of the policy, and that after 1925 it became active. Incipient tuberculosis does not necessarily render one totally disabled. While active pulmonary tuberculosis generally amounts to total disability, and incipient may, it is a matter of common knowledge that incipient tuberculosis can be arrested, and in itself is not destructive of the ability to continuously pursue some gainful occupation. In Nicolay v. United States (C. C. A. 10) 51 F.(2d) 170, 172, the court said: "The plaintiff's right to recover depends upon whether or not he was permanently and totally disabled in May, 1919; the fact that he was then in the early stages of tuberculosis is not conclusive, for we are not required to close our eyes to a fact known to most mankind, and that is that many men and women are now doing their daily tasks who have at one time been so afflicted. * * * Unless the plaintiff has produced some substantial proof that it was reasonably certain, on or before May 2, 1919, that his condition of total disability was one that would continue throughout his life, the case must be affirmed. We cannot find any such substantial evidence in the record. If, for the moment, we disregard the evidence as to the succeeding years, we have at best an insured in the early stages of tuberculosis. It is a matter of common knowledge that many such incipient tuberculars respond readily to the simple treatment of rest and nourishment; the activity is arrested, and, while there probably always will be a susceptibility of recurrence, they are able to, and do, live out their lives following gainful occupations."

This question is discussed in the opinion of Judge Sanborn in Eggen v. United States (C. C. A.) 58 F.(2d) 616.

Appellant undoubtedly became seriously disabled in 1925, but there is no showing here either of total disability prior to March 31, 1919, or of the permanency of any disability. Neither of these essential elements for recovery is found in this record. They are both left in the realm of speculation.

The trial court was right in directing a verdict, and its judgment is affirmed.