**PREVETTE et al. v. UNITED STATES.**
No. 3513.

Circuit Court of Appeals, Fourth Circuit.
Jan. 4, 1934.

R. H. McNeill, of Washington, D. C. (H. Woodward Winburn, of Greensboro, N. C., on the brief), for appellants.

Charles R. Jonas, Asst. U. S. Atty., of Lincolnton, N. C. (Frank C. Patton, U. S. Atty., of Morganton, N. C., and Thos. A. Mc-Coy, Asst. U. S. Atty., of Asheville, N. C., on the brief), for the United States.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This is a suit upon a policy of war risk insurance in the amount of $10,000, issued to Carl Ervin Creedmore, who was drafted in the army on August 26, 1918, and discharged October 28, 1918, after serving two months and two days at Camp Jackson, S. C. The policy lapsed for nonpayment of the premiums on December 1, 1918, unless at that time the insured was permanently and totally disabled. The insured died on July 12, 1923, of a kidney ailment which the testimony showed was associated with or induced by tuberculosis. Suit was brought on the policy by the administrator of the estate of the insured, hereinafter called the plaintiff, on October 18, 1928. The question of permanent and total disability was left to the jury, which returned a verdict for the defendant; and the plaintiff appealed, assigning as error the admission of certain evidence, the refusal of the trial judge to grant certain instructions to the jury, and the impropriety of an argument made to the jury by the United States attorney.

The evidence tended to show that the insured was suffering from tuberculosis at the time of his discharge after his brief service in the army. A physician who examined him in 1918 and 1919 testified on his behalf that his condition was active, and considerably advanced, and that it grew progressively worse during this period. He was advised to go to bed, to take treatment, and not to work, and his physician thought that if he should do so there was possibly a chance of recovery. He failed to heed this advice. Other physicians testified that the condition of the insured at various times from 1919 until his death grew progressively worse, although there were periods when the disease was quiescent. In 1920 or 1921 he developed a kidney trouble which was the immediate cause of his death. On the other hand, medical testimony on the part of the United States tended to show that in 1921 the pulmonary tuberculosis from which the insured was suffering was arrested and inactive.

The work record of the insured showed that within a week after his discharge, he returned to his former occupation as a laborer in a cotton mill, and that he continued to work in various mills with some interruptions until November 25, 1922, earning the sum of approximately $1,700 in four years. During this period, he was assisted in his work by other persons. During certain periods, his work was fairly regular but there were also periods of one to four months, aggregating in all fifteen months, when he did not work at all. Neither side requested a directed verdict on this testimony.

Over the objection of the plaintiff, a physician, testifying for the United States, was allowed to express the opinion, in answer to a hypothetical question based on the work record of the insured, that on October 28, 1918, the insured was not totally and permanently disabled. It was error to receive this testimony for the reasons pointed out in our decision in United States v. Sauls, 65 F. (2d) 886. The plaintiff, however, suggests in his brief that he does not seek a reversal merely on this ground, desiring only a ruling for the guidance of the court in the event of a new trial; and we do not regard the error as prejudicial because physicians testifying for the plaintiff were also allowed, contrary to the ruling in the cited case, to express an opinion as to the ability of the deceased after his discharge from the army to follow continuously a substantially gainful occupation.

Evidence offered by the United States was also admitted over the plaintiff's objection to show that the insured drew compensation from the United States at the rate of $80 to $90 per month. Subsequently, it was shown, apparently without objection, that

the total compensation might have amounted to $5,000. The ground of the objection to the testimony was not stated at the time that the testimony was offered [see United States v. Sauls (C. C. A.) 65 F.(2d) 886]; but it is now argued that the evidence was prejudicial as indicating that the United States had already paid the insured a considerable sum for his military services, and because the trial judge did not explain to the jury the difference between compensation and the insurance claimed in this case. On the other hand, it is suggested by the United States that its purpose was to offset certain testimony of the plaintiff tending to show that the insured did not follow the advice of his physicians to abstain from labor, because he could not afford to do so, and to show that he worked as a mill hand from choice and not from necessity.

It was held in Crisman v. United States (C. C. A.) 61 F.(2d) 673 [see, also, Lomicka v. United States (D. C.) 2 F. Supp. 766], that it was not proper for the United States, in a suit on a war risk insurance policy, to bring out the fact that the United States had paid compensation to the insured, although it was made clear by the trial judge that the question for the jury was merely a matter of contract, and that the evidence was admitted to show all the surrounding circumstances. It was said on appeal that the situation presented came within the principle of the decisions holding that evidence that an injured person had received compensation for his injury from an insurance company is not relevant or material in an action to recover therefor from a wrongdoer. However, it does not appear from the opinion that labor actually performed by the insured was under consideration by the court as bearing upon the question of his disability; and the court did refer with approval to the decision in Blair v. United States (C. C. A.) 47 F.(2d) 109, holding that evidence of compensation received for vocational training is germane to a claim of total and permanent disability, because it constitutes conduct on the part of the claimant inconsistent with the claim. In United States v. Dudley (C. C. A.) 64 F.(2d) 743, a converse situation to that in the pending case arose in a suit upon a war risk policy, when the insured introduced evidence that after a certain material date, he had lived mostly on charity and help he had received from his family. It was held that although ordinarily evidence of the financial condition of the insured is not material, and may unduly influence the verdict, it was properly received in this instance since it tended to support the insured's claim of disability when viewed in contrast with his pre-war independence and success.

Under the circumstances of the pending case, the evidence of the payment of compensation was relevant because it served in some measure to show whether the insured labored as a mill hand voluntarily or was compelled to work by reason of his financial necessities; and we do not think that the jury were led to conclude that the receipt of compensation by the insured prevented recovery upon the certificate of insurance. It is, of course, essential that the jury be warned, whenever there is any likelihood of confusion, that compensation does not take the place of insurance. Here the district judge in his charge called attention in general terms to the purpose for which the evidence was offered, when he said in effect that the government contended that the amount which the insured received in the form of compensation was sufficient to have kept him without any work on his part, and that consequently his willingness to labor for substantial periods indicated that he was not without physical capacity. The jury were also told that they were not considering a matter of charity, but a policy of insurance which protected the insured whether he crossed the seas or not; and that the case must be decided as any other case based upon a contract between individuals.

 The plaintiff also complains of an argument made by the United States attorney in his address to the jury when he said that the government had already paid the deceased soldier the large sum of $5,000 for two months' services, and that if the plaintiff could recover on the facts of this case, most soldiers who saw service in the World War could file suits and recover on their insurance policies and entail the expenditure of large sums of money by the United States. This sort of argument, in the bald form in which it occurs in the record, does not meet the approval of this court. Stripped of the context in which it was set, it seems to have been an attempt to persuade the jury to ignore the rights of the plaintiff under the contract of insurance, because the soldier had been given other privileges accorded him by the law, and because of the great expense to which the government might be subjected in like cases. Objection was made by the plaintiff at the time but it was overruled. The record does not show that the district judge made any

other comment to the jury upon the subject of compensation than that outlined above; although it is said in the government's brief that he admonished the jury to decide the case, uninfluenced by prejudice or sympathy, upon the facts in evidence and the law as contained in the charge of the court. The argument merited the condemnation of the court, and unless the jury were cautioned to ignore it in such a way as to make certain that the plaintiff's rights would not be violated, a new trial would follow as a matter of course. We should feel obliged to grant a new trial now, if we were not convinced that there was no substantial evidence upon which a verdict for the plaintiff could be based. The burden was on him to show that the insured was permanently and totally disabled at or before the time that the policy lapsed; but no one can say from the facts in this case that the soldier would not have recovered had he obeyed his physician and submitted to treatment during the earlier stages of his disease, shortly after his discharge from the army, instead of performing hard labor in the mills. As was said in United States v. Stack (C. C. A.) 62 F.(2d) 1056, quoting from Eggen v. United States (C. C. A.) 58 F.(2d) 616: "An insured may not convert a total temporary disability existing before lapse into a total permanent disability by neglecting his condition after lapse, and the failure to take treatment may destroy whatever probative value death or permanency of disability occurring after lapse would otherwise have." See, also, Garrison v. United States (C. C. A.) 62 F.(2d) 41.

The plaintiff also complains of the refusal of the district judge to grant two prayers for instructions to the jury wherein it was emphasized that total disability does not necessarily mean a total incapacity to work, but exists whenever there is an inability to follow continuously some substantially gainful occupation without material injury to health. The jury, however, were not without proper instructions on this point for the District Judge in his general charge to the jury laid down the familiar rules in regard to the meaning of total and permanent disability which have been frequently announced by this court. See Carter v. United States (C. C. A.) 49 F.(2d) 221; United States v. Thomas (C. C. A.) 53 F.(2d) 192; United States v. Diehl (C. C. A.) 62 F.(2d) 343.

The judgment of the District Court is affirmed.