## ROSE v. UNITED STATES.
### No. 919.

Circuit Court of Appeals, Tenth Circuit.
March 21, 1934.

Paul F. Showalter, of Oklahoma City, Okl. (M. Ralph Brown, of Albuquerque, N. M., on the brief), for appellant.

Randolph C. Shaw, Sp. Asst. to Atty. Gen., of Washington, D. C. (Wm. J. Barker, U. S. Atty., of Santa Fe, N. M., and Gilberto Espinosa, Asst. U. S. Atty., of Albuquerque, N. M., on the brief), for the United States.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

A jury found for the government in this action upon a war risk insurance policy. Whether the trial court erred in admitting evidence that plaintiff was paid from $50 to $80 a month under the Compensation Act is the only error assigned.

Plaintiff entered the service in 1918 as an army registered nurse; she was then in good health. After five years in the army she was discharged in ill health, having lost from 28 to 30 pounds in weight while in the service; at the time of the trial, she weighed less than 90 pounds. She has been a patient in hospitals off and on ever since her discharge, and has worked, a few days at a time, not to exceed three months altogether in ten years.

Upon cross-examination government counsel asked her as to the benefits paid her by the government under the compensation statutes since her discharge, and as to the amount thereof. Objections to these questions were overruled. The purpose of the questions was not to rebut evidence that plaintiff had worked because of financial stress, or in support of a defense of malingering, or to meet any other subsidiary issue. The purpose was to persuade the jury that she had had enough. This is manifest by a question designed to prove that compensation paid her compared favorably with the ordinary pay of a nurse in good health, to which the court sustained an objection, and an unsuccessful effort to argue to the jury that the payment of such compensation was a defense to this action on her policy.

The questions asked were improper and the objections should have been sustained. Very early in war risk insurance litigation, disabled soldiers undertook to establish their disability, over the objection of the government, by proof that the government had rated them disabled for purposes of compensation. Such proof has been uniformly held to be immaterial. United States v. Golden (C. C. A. 10) 34 F.(2d) 367; Runkle v. United States (C. C. A. 10) 42 F.(2d) 804; McGovern v. United States (D. C.) 294 F. 108, affirmed (C. C. A. 9) 299 F. 302. If such proof is immaterial when offered by the soldier, it is likewise immaterial when offered by the government. Chrisman v. United States (C. C. A. 9) 61 F.(2d) 673; Lomicka v. United States (D. C. N. Y.) 2 F. Supp. 766. A war risk insurance policy is a contract, bought and paid for. If the contingency insured against occurs during the life of the policy, the insured may recover; otherwise not. The fact that the

administrative arm of the government may allow or disallow compensation, based upon a different standard of disability, has nothing to do with a judicial determination of disability under the policy.

This conclusion is supported, not impaired by the decision of the Fourth Circuit in Prevette v. United States, 68 F.(2d) 112. There the insured explained his work record by a plea of financial necessity. Judge Soper, in speaking for the court, properly held that the receipt of compensation was admissible to answer the plea of financial stringency. Other situations may well arise where such proof is material to rebut or support an incidental issue. Where the fact of compensation has a material bearing upon the issues in a particular case, it is of course admissible like any other fact. Each case presents its own setting, and no general rule can be laid down in advance. Suffice it is here to say, that as this case developed, the evidence had no material bearing, and could serve no purpose except to prejudice the jury.

The trial court quickly concluded that the questions were improper; later objections were sustained; counsel were not permitted to argue the 'point to the jury; and in his charge to the jury, the evidence was minimized as background. It may be said that the trial court did all in his power to take out the sting. But when evidence as strongly prejudicial as this once gets before a jury, the harm is done. Ordinarily the error cannot be cured by instructing the jury to put it out of their minds; it lurks there despite the charge, to influence their deliberations, consciously or unconsciously. Woolworth Co. v. Davis (C. C. A. 10) 41 F. (2d) 342. In the Chrisman Case, supra, the Ninth Circuit held that a charge to disregard the fact of compensation payments did not cure the error.

The 'forceful language of Mr. Justice Cardozo in Shepard v. United States, 290 U. S. 96, 104, 54 S. Ct. 22, 25, 78 L. Ed. 196, is apposite; there, speaking of highly prejudicial evidence which conceivably was admissible for a very narrow purpose, he said:

"It will not do to say that the jury might accept the declarations for any light that they cast upon the existence of a vital urge, and reject them to the extent that they charged the death to some one else. Discrimination so subtle is a feat beyond the compass of ordinary minds. The reverberating clang of those accusatory words would drown all weaker sounds. It is for ordinary minds,

and not for psychoanalysts, that our rules of evidence are framed."

So here. That a grateful and generous government was paying plaintiff $80 a month as compensation for the health she had sacrificed in nursing the wounded and diseased back to health, was a vivid fact that the average juror could not banish from his mind at will, in deciding whether she was entitled to still more from the same government.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.