**COCKRELL v. UNITED STATES.**
No. 9951.

Circuit Court of Appeals, Eighth Circuit.
Nov. 17, 1934.

George F. Anderson, of Kansas City, Mo., for appellant.

Randolph C. Shaw, Sp. Asst. to Atty. Gen. (Robert W. Colflesh, U. S. Atty., of Des Moines, Iowa, Frank F. Wilson, Asst. U. S. Atty., of Mt. Ayr, Iowa, Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to the Atty. Gen., and Young M. Smith, Atty. Department of Justice, of Washington, D. C., on the brief), for the United States.

Before STONE, Circuit Judge, and JOYCE and BELL, District Judges.

JOYCE, District Judge.

This action involving a war risk insurance contract was originally commenced by Edgar J. Cockrell. Following his death on May 20, 1932, his widow filed an amended petition praying judgment both in her individual capacity as beneficiary and as executrix of the estate of the decedent. From a judgment entered on a verdict in favor of the government, this appeal is taken.

The deceased enlisted in the Army in April, 1918, and served until May 12, 1919. He was discharged because of a disability resulting from a gunshot wound. Prior to his enlistment, deceased had been engaged in farming. The evidence shows that after his discharge he returned to the farm, but did little or no work from that time to the date of his death.

There are three assignments of error which in substance present the question whether the opening statement of counsel for the government that the deceased had been paid $6,441.99 as compensation under the Soldiers' Compensation Act and the admission of evidence

to prove that fact constituted prejudicial error.

■■ Appellant also urges in argument that the introduction in evidence by the government of a statement from the certificate of disability for discharge of the soldier reading: "In view of occupation, to what extent is he disabled from earning subsistence? 35%," was error. Appellee properly makes the objection that the point has not been preserved for review. It is not covered either by any assignment of error or by any specification of error. However, had it been properly preserved for review, it must be determined against appellant because argued here on a different basis from that raised by the objection to the evidence itself. The objection made to the offer of evidence was "that there is no showing that those who made the statement in that regard—no showing as to what the criterion was by which they were judging degree," while the matter argued before us is as to the general admissibility of the evidence.'

■ A war risk insurance policy has all the legal qualities and characteristics of any other contract. Lynch v. United States, 292 U. S. 571, 54 S. Ct. 840, 78 L. Ed. 1434. Under the terms of that contract, recovery can be had only for "total permanent disability" occurring during the life of the contract. United States v. Green, 69 F.(2d) 921, 922 (C. C. A. 8). The policy in this case lapsed on July 1, 1919, and it became essential that the above disability be shown to have existed not later than that date.

■ A common method of proving total and permanent disability within the contract term is by introducing evidence of the claimant's condition after the term. While such evidence is solely for the purpose of showing the condition before lapse of the contract, it is recognized that it "has a direct bearing upon the permanency of the injury and often upon the totality at the time of the lapse." United States v. Green, supra. Such character of evidence appears strongly in this case, being introduced by plaintiff for the purpose of showing that the soldier was unable, to work after his discharge from the Army. The government introduced no independent evidence of the soldier actually working after discharge, contenting itself with cross-examination of witnesses of the plaintiff. The theory of the government was that the soldier was only partially disabled, and that he was malingering with no desire or incentive to work, although he could have done so, and that this situation

was directly influenced by the above referred to compensation paid him. In his opening statement, counsel for the government said:

"Compensation in these cases, gentlemen, has many times something to do in these cases with the will of one of these soldiers to work, and that is the reason why I am telling you now the amount of compensation that this soldier drew. * * *

"It is the position of the Government, we do not claim that he performed any substantial amount of work, but we do claim that he was partially disabled and that he could have carried on during these earlier years if he so desired."

The evidence as to the injury showed a gunshot wound in the neck affecting the spinal cord and initially producing partial paralysis of the left arm and hand. There is a conflict of evidence as to the existence or extent of paralysis of the left leg and of the extent of the paralysis to the left arm and hand in the earlier years after the injury. The testimony in this regard for the plaintiff tended to show practically complete paralysis of the left arm and hand and decided paralysis of the left leg. Medical testimony introduced by the government tended to show a much less paralysis of the arm and hand, as well as of the leg. Examinations some years later (in 1931), as well as lay testimony tend to show a much more aggravated condition, but even the cause of this aggravated condition is in dispute. An autopsy after death, in 1932, revealed that the immediate cause of death was obstruction of the pyloric end of the stomach, that such obstruction was of long standing, and that it would or might produce malnutrition, which, in the opinion of medical witnesses for the government, accounted for the aggravated deterioration. In addition to the above evidence, the government introduced a medical witness who had made two neurological examinations of the soldier, one on April 9, 1931, and an earlier one on February 28, 1927. These two examinations were introduced in evidence, and the doctor making them testified concerning them. In the report of the earlier examination appears the following:

"The man will not cooperate in the examination. Can extend both arms above his head and can do a great many things with his disabled arm, yet, when told to press back with his arms against the examiner, he really does not make any effort with either arm, same way when told to reach forward and grasp something, he doesn't seem to exert either arm.

"The claimant further states that all he needs is sufficient to keep him and his family and he is not particular whether he gets well or not, when explained to him that treatment might benefit him in this condition.

"It is believed that there is an element of malingering and slight possibility of hysteria and it is very doubtful if there is any injury to any nerves and the atrophy and other symptoms are from disuse—this man has not made an effort to rehabilitate himself in any way, in regard to work even with the right hand. Therefore, it is believed that this man should be sent to a hospital for a period of observation in order to determine the true nature of his disability and rule out any doubt that might exist. Until such is determined the diagnosis will be carried tentatively.

"Neurological Diagnosis: Injury partial to upper radicular group—malingering. Prognosis: Good."

In his oral testimony as to that examination the doctor said:

"I had him hold out his arms to the side, and put my arms under his to see if he could put down pressure, and he wouldn't cooperate with me with his right arm. He wouldn't put any pressure on his right arm to bring it down, which was not his disabled arm. I made mention of that and said 'he doesn't make any effort with either arm.' In my judgment he absolutely wasn't trying, because there was no disability manifest in his right arm. I asked him to reach out and grasp things, and he wouldn't reach with either arm. I gave him all the usual tests for the reflexes in the disabled parts and others.
* * *

"Q. I notice a report here in the examination of Feb. 28, 1927, 'The claimant states that all he needs is sufficient to keep him and his family.' Did he make that statement to you at that time? A. He evidently did, or I wouldn't have put it in there.

"Q. Do you believe that there was an element of malingering, or what do you mean by that? A. Well, that means that he is exaggerating, trying to present symptoms, that weren't present, where there was no medical reason,—for which there was no medical reason. * * * When I examined him in 1927 I thought he was malingering."

It is to the above situation of fact issue and evidence that the law as to the admissibility of compensation paid is to be stated and applied.

In discussing the influence upon disability of proof that the claimant did little work,

this court has twice said that the fact that little work was done was not the test, but that (italics inserted) "the test is the *ability* to carry on such gainful occupation continuously." United States v. Hairston, 55 F.(2d) 825, and United States v. Weeks, 62 F.(2d) 1030, 1031. Also see United States v. Hill, 61 F.(2d) 651, 653 (C. C. A. 9). Since the real test is the *ability* to work, it is obvious that, where little or no work is shown to have been done, the will or desire or incentive to work or not work may be the subject of very pertinent inquiries. It is also clear that such incentive may be affected or controlled by the financial necessity or lack of necessity to try to work. In this respect, "the individuality of a claimant may be an important and even a controlling element in the circumstances of his particular case." United States v. Green, supra. On the other hand, if this evidence as to financial condition has to do with compensation paid by the government, from which money is being sought in the suit on the war risk policy, there is a danger of prejudice to the claimant. This situation has resulted in the courts viewing the admissibility of such evidence as being proper under some circumstances and improper in others. In Taylor v. United States, 71 F.(2d) 76, 77 (C. C. A. 5), the court states that the relevancy or the prejudicial effect of such evidence is a matter "depending upon the other facts in the case." In Prevette v. United States, 68 F.(2d) 112, 114 (C. C. A. 4), evidence of such compensation was held admissible in aid of the claimant, "because it served in some measure to show whether the insured labored as a mill hand voluntarily or was compelled to work by reason of his financial necessities," the court further stating that "it is, of course, essential that the jury be warned, whenever there is any likelihood of confusion, that compensation does not take the place of insurance." In Blair v. United States, 47 F.(2d) 109, this court held that evidence that the soldier had received vocational training at the expense of the government, with training pay for some of the months, was admissible as showing that taking vocational training was inconsistent with total and permanent disability. See, also, opinions of this court in United States v. Weeks, 62 F.(2d) 1030, and Andrews v. United States, 63 F.(2d) 184, where the element of compensation was present in both cases and apparently not objected to in the lower court. In Rose v. United States, 70 F.(2d) 68 (C. C. A. 10), the court held that evidence of such compensation paid to the claimant "was not to rebut evidence

that plaintiff had worked because of financial stress, or in support of a defense of malingering, or to meet any other subsidiary issue. The purpose was to persuade the jury that she had had enough," and in such situation held the evidence inadmissible. However, the opinion, besides intimating as above quoted that there were situations where such evidence would be proper, states that its conclusion "is supported, not impaired by the decision of the Fourth Circuit in Prevette v. United States, 68 F.(2d) 112. There the insured explained his work record by a plea of financial necessity. Judge Soper, in speaking for the court, properly held that the receipt of compensation was admissible to answer the plea of financial stringency. Other situations may well arise where such proof is material to rebut or support an incidental issue. Where the fact of compensation has a material bearing upon the issues in a particular case, it is of course admissible like any other fact. Each case presents its own setting, and no general rule can be laid down in advance. Suffice it is here to say, that as this case developed, the evidence had no material bearing, and could serve no purpose except to prejudice the jury."

From the above decisions it is clear that the admissibility of this character of evidence depends upon the fact issues and the situation developed by the evidence of each particular case. Appellant emphasizes reliance upon Chrisman v. United States, 61 F.(2d) 673 (C. C. A. 9). The exact fact situation as developed by the evidence in that case, in so far as bearing on the matter here involved, is not quite clear. The holding is that evidence of such compensation is not admissible. The consideration moving the court seemed to be that such compensation was entirely independent of the insurance, and therefore such evidence would have prejudicial influence. In support of this, there are a number of citations, all of which are personal injury cases where the issue of compensation was concerned either with some outside compensation received by the plaintiff or indemnity insurance held by the defendant. To our mind, what those citations establish is merely the prejudice of such evidence, unless pertinent to some issue and unless carefully confined by the court to the pertinent issue. It can hardly be said that the court in the Chrisman Case intended to hold that under no circumstances was such evidence admissible, since the opinion cites and approves the decision of this court in Blair v. United States, supra. Also, in a later decision by the same court,

United States v. Dudley, 64 F.(2d) 743, 745, the claimant introduced evidence that before entering the Army he had operated a large ranch, but since discharge from the Army his condition had prevented successful resumption of that occupation even on a small scale, and that during part of the time he earned $80 a month at light clerical work, which was increased to $110, and later to $125. Denying the contention that such testimony was wrongfully admitted, the court said: "While evidence of insured's wealth or his poverty, his income or his expenses, as such, is ordinarily of no materiality and may in some cases cause sympathy or prejudice to influence the verdict, we cannot say in this case, in view of the testimony admitted as to his prewar success, that evidence of his nine-year postwar failures, due according to his testimony to his condition, was improperly received over objection on this ground. It fortifies his testimony as to the extent of his then disabilities, and testimony as to such later conditions may well tend to confirm, or, on the contrary, to refute the testimony, lay and medical, as to his condition on discharge. In any event, in view of other similar evidence received, without objection, no prejudice resulted from its admission."

However, if the Chrisman decision does go as far as appellant contends, it is directly opposed to the decision in the Prevette Case and to the reasoning in the Rose and Blair Cases and, in our judgment should not be followed.

With this statement of the rule of law governing the admissibility of this character of evidence, it remains to apply that rule to the situation and issues above shown in this case. A consideration of such issues and evidence makes clear that the main issue of fact in this case was whether the soldier was malingering. The evidence showed the injury; there was conflict as to the extent thereof; there was evidence of little or no work done; and there was evidence of malingering. There was evidence of a statement by the soldier, in 1927, when he was being examined, that "all he needs is sufficient to keep him and his family and he is not particular whether he gets well or not, when explained to him that treatment might benefit him in this condition." There is also evidence that with the compensation from the government he bought a wagon and team, and it is also in evidence that he had means (from the compensation payments or otherwise does not appear) to buy two Ford cars at different times. In this situation it would seem very pertinent to

show that he had income, which would take away the incentive for him to try to work. At least a portion of such income was compensation received from the government.

The recent case of United States v. Matory, 71 F.(2d) 798, 799 (C. C. A. 7), cited by appellant subsequent to the argument before us, held that the effort of appellee to get the matter of compensation before the jury "was so persistent and prejudicial as to have fully warranted the trial court in declaring a mistrial and resetting the case." It also found that appellant was not in position to complain, as it was sought to get the same evidence before the jury "for the purpose of showing that the reason appellee had worked practically not at all since his discharge from the Army was because he was receiving disability compensation which was amply sufficient for his maintenance and that he did not want to work although physically capable." The facts of that case are not before us, and, as applied to them, the holding of the court was doubtless justified, but we do not regard the case as applicable here.

While the charge of the court is not here in question and no exception was taken thereto, it is pertinent to state that the court carefully limited this testimony. The charge as to this matter was as follows: "Evidence has been introduced as to the amount of compensation that Edgar J. Cockrell received from the Government. This should be considered by you only the question of whether Edgar J. Cockrell in seeking or procuring employment honestly and within his strength endeavored to work. Many men could work that do not and a regular compensation affects purpose and determination. As you have been told, the question here for consideration is not whether Edgar J. Cockrell did work, but whether it were possible for him as he was on July 1st, 1919, to perform, with reasonable regularity, any substantial portion of the work of the world in regular competition with others at the risk of serious physical injury to himself resulting from such work."

Not only was the jury so charged, but, at the time this evidence was offered in ruling on the objection thereto, the court said: "Well, overruled. It is admissible. I think I should tell the jury, that as I understand it that is a record of what he was allowed as compensation for his disability occurring during his service, and it is admissible only for the purpose of showing that he did have some means and income, and admitted as bearing on the question of whether or not a man with means and income would try to work or otherwise. He might not do so. But that is the reason that the income is admitted in this case, but for no other purpose, as bearing on the question of whether or not it affected him in whether he worked or tried to work, etc., but not for the purpose of showing whether or not he had been cared for by the Government, or whether he had received what you might think was all he was entitled to. That has nothing to do with the case. This is a suit on an insurance policy and it doesn't make any difference what sum he might have gotten from some other source, but it is admissible solely on that question, of whether or not a man with an income would—it affects the evidence here as to whether he worked or whether he did not work, and whether or not it has any effect on that is for the jury to say."

It would be difficult to imagine how the court could have more carefully restricted the influence of this evidence to its proper sphere.

The judgment of the District Court is affirmed.