## SPROW v. UNITED STATES.
### No. 6547.

Circuit Court of Appeals, Seventh Circuit. May 11, 1938.

Rehearing Denied Oct. 26, 1938.

Edward H. S. Martin, of Chicago, Ill., for appellant.

Michael L. Igoe, U. S. Atty., and William M. Lytle, Atty., Department of Justice, both of Chicago, Ill., Julius C. Martin, Director, Bureau of War Risk Litigation, Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Young M. Smith, Atty., Department of Justice, of Washington, D. C.

Before MAJOR and TREANOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff, having sued to recover war risk insurance, appeals from a judgment in favor of defendant entered upon a directed verdict. The only question presented is whether the evidence was such as to justify

the court's ruling, as a matter of law, that there was lack of substantial evidence that plaintiff was totally and permanently disabled while his insurance remained in effect.

The evidence relied upon by plaintiff is as follows: He enlisted August 9, 1917, and was discharged June 2, 1919. His insurance remained in force through August 31, 1919, and never lapsed, if he became totally and permanently disabled prior to that date.

While in the service he was in hospitals several times in France, receiving treatment for scabies, influenza, dermatitis, colds, sore throat, bronchitis, pharyngitis and catarrhal tonsilitis. At the time of his discharge the government authorities certified that he was in good health and he signed a declaration denying disability. He says, in explanation of this, that some twenty-five men were being discharged at the same time; that he does not remember reading the statement or having it read to him; that the only examination given him was a "general going over"; that he was sent from desk to desk, spending about five minutes at each desk; that the physicians did not "take hold of him or move his legs or arms but looked him over by just glancing at him"; and that one "listened to his heart with a stethoscope." He testified that he did not say that he was suffering from any disease because he was afraid he would be sent to a hospital and preferred to return home.

Upon his discharge plaintiff lived with his mother and married sister for six months and thereafter with his mother alone. Neither he nor his mother had any income or property except $3 or $4 a week which his mother earned by scrubbing floors and washing. Otherwise, she was dependent upon him. Consequently, plaintiff went to work within two or three weeks after his discharge. He continued with one firm until some time in 1921 and then accepted employment at a second place, from which he retired in May, 1923. He has done no work since. He said that the normal weekly wages at his first place of employment varied from $26 per week to $150 per month, and, at the second place, averaged, perhaps, $30 per week, but that at neither place did he ever receive the full rate of pay. He was paid for the days he worked, that is, "only two or three days per week, some weeks only parts of days and never

full time," because his ailments prevented him from doing otherwise.

The government admits that plaintiff in 1931 was totally and permanently disabled because of arthritis, atrophic, deformans, polyarticular or infective in character. He testified that when he first procured employment after discharge he was weak and his left shoulder, right hip and the lower part of his spine pained him; that he was sore and stiff and experienced difficulty in bending, straightening, and in extending his arm over his shoulder. His hip pained him at night. He testified that this condition made it impossible for him to work more than two or three days at a time and never improved. He drove a light delivery wagon but had help in loading and unloading it; he did some clerical work and packed small articles in boxes and barrels. But he adhered to his statement that at no time could he do more than partial time work, because of inability resulting from the condition of his joints, spine, hip, feet, hands and arms. He said that if he sat more than an hour his spine would become stiff and cause him pain.

Since 1931 he has not been able to walk. Prior to that time he walked with crutches or cane. A lay witness testified that he had walked in 1924, when she first knew him, with much labor, lifting one foot and balancing himself and then the other, very slowly, "like he was pulling his feet with a heavy weight upon them."

Plaintiff said he was first treated by a doctor after the war in 1920, but that physician is now deceased. He had his tonsils removed about 1922.

A qualified physician testified that the effect of moving diseased joints, especially in acute arthritis, is evil and tends to make the condition worse; that although plaintiff walked in 1927 it was painful for him to do so; that, because of atrophic arthritis, motion of his joints is impaired and results in pain. He testified that, if such arthritis reaches the stage where one shoulder, hip and spine are painful to the degree that it would pain the patient to move his shoulder and that stooping would cause pain in his spine, all such motion would unquestionably be detrimental to him.

There was, then, direct testimony to the effect that within two weeks after he was discharged, plaintiff began trying to work, in order to support himself and his mother; that he could work only two or three days

a week and at times only a part of the day; that from the beginning of his attempts in this respect, his shoulder, hip and spine pained him; that he could not move his shoulder without pain; that stooping caused pain in his spine; that he could work only at irregular intervals up until 1923 and was able to do no work of any character thereafter. Furthermore, the physician testified that when atrophic arthritis has reached the stage where pain results in shoulder, hip and spine from motion, such results indicate advancement of the disease to the point where all such motion is detrimental. This, it seems to us, was substantial evidence of plaintiff's total and permanent disability within the life of the insurance. ·

The test is not whether the plaintiff followed a substantially gainful occupation but whether he was able to do so. Hanagan v. United States, 7 Cir., 57 F.2d 860; United States v. Hairston, 8 Cir., 55 F.2d 825; United States v. Hill, 9 Cir., 61 F.2d 651. And the question before the court was not whether the plaintiff should recover but whether he had produced substantial evidence to be submitted to the jury. If this issue were one for us to determine as an original proposition, we might, from an examination of the entire record, justify a finding against the plaintiff, but that is not within the scope of our obligation. Rather it is our duty to determine whether the court was justified, as a matter of law, in excluding the evidence from the jury and directing a verdict for the defendant. It cannot be said that the nature of the work done, in the manner it was done, according to the testimony of the plaintiff, is necessarily irreconcilable with existence of the disease with which he was and is afflicted. Nor was it of such duration or of such character as to continuity as to be conclusive as to nonexistence of total and permanent disability. The medical testimony is that such work aggravated plaintiff's condition, if it was as stated by plaintiff. True, one should not be allowed to assert that he was totally disabled during two or more years, if during such time he worked at steady employment. But we cannot say that recovery is barred as a matter of law by the work done after the date to which premiums were paid. United States v. Hobaker, 7 Cir., 91 F.2d 7; United States v. Flippence, 10 Cir., 72 F.2d 611. One who has a serious and incurable ailment for which rest is the recognized treatment, and which will be aggravated by work, motion or movement, may nevertheless be totally and permanently disabled. Although he may attempt to engage in gainful employment, it may well be that he does his work only at the risk of his health and danger to his life. United States v. Brown, 10 Cir., 72 F.2d 608; United States v. Suomy, 9 Cir., 70 F.2d 542; United States v. Godfrey, 1 Cir., 47 F.2d 126. Upon such a statement of facts, the evidence is to be weighed by the jury and not by the court. United States v. O'-Daniel, 5 Cir., 73 F.2d 886. We do not hold that the averments of the complaint were proved by a preponderance of all the evidence, but we do believe that plaintiff's testimony, coupled with that of his physician, constituted substantial evidence of total and permanent disability to go to the jury. United States v. Tyrakowski, 7 Cir., 50 F.2d 766.

Accordingly the judgment is reversed with directions to grant a new trial.