654

George Earl Hoffman, U. S. Atty., and Wm. Logan Hill, Asst. U. S. Atty., both of Pensacola, Fla., and Will G. Beardslee, Sp. Asst. to Atty. Gen., for the United States.

Claude Ogilvie, of Jacksonville, Fla., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

This is an appeal from a recovery on a war risk insurance policy for a total and permanent disability, the errors assigned being a refusal to direct the verdict and a refusal to admit in evidence a Veterans' Hospital medical report. The appellant has died pending the appeal, and his executrix has been substituted. The evidence is abundant but not seriously conflicting. The insured, Ivey Preston Timmons, was honorably dis-charged from the army June 25, 1919, aged twenty-five years. While in the army he had influenza and double pneumonia, and infected tonsils ending in rheumatic fever and the removal of the tonsils, and had not recovered at his discharge. He continued sick, coughing and weak, and unable to work for a year afterwards. He had then a quick, unstable heart, which his attending physician had frequently observed to follow influenza and pneumonia. Before entering the army Timmons had been managing a Ford automobile agency, and in August, 1920, financed by his uncle, he bought the Ford dealership in Kissimmee, Fla., employing a manager but himself acting in an advisory capacity. In 1921 he took a partner. In December, 1922, the business was sold out without much profit, but the bank accounts showed that during the period the business had made total deposits of $174,096.97, and his personal bank accounts showed deposits of $26,431. The latter are not shown to have arisen from any source other than withdrawals from the business. The testimony is that during this period he was still weak and coughing, and lost a day or a week from business from time to time. He maintained his war risk policy, with two lapses and two reinstatements, until December 31, 1921, when it lapsed finally. On January 21, 1922, he applied to the New York Life Insurance Company for insurance, not mentioning the war risk policy among his existing insurances, and affirming in the application that he had had pneumonia and influenza in 1918 but had been permanently cured and was then a proper subject for life insurance. The medical examiner found a slight murmur over the tricuspid valve of his heart. The insurance was accepted by the company, but without disability benefits, Timmons being "marked up fifteen years" as to premium rate, and he declined the policy. Beginning December, 1922, for eighteen months he sold Gray automobiles in connection with his uncle; the lay witnesses saying again that he was weak, easily exhausted, and not able to work all the time. He was sometimes working on a salary and sometimes on a commission, but says he made little money. It appears that during this time in July, 1923, he applied to the Veterans' Bureau for compensation on account of heart and lung trouble originating in the service, and in November, 1923, a government physician found present mitral insufficiency of the heart, with an unfavorable prognosis; but he was rated able to resume his pre-war occupation as salesman. In February, 1924, Timmons applied to reinstate his war risk

policy, admitting that he had heart and lung trouble as stated in his application for compensation, but affirming that his health was as good as at the time of default in his premium, and that he was not totally and permanently disabled. On examination heart murmurs and irregularities were found, and the risk was reported poor and declined. During 1925 and 1926 Timmons owned and with the assistance of a woman secretary ran an insurance agency, losing some time from sickness as before. From July 1, 1927, to August 20, 1929, he was hired continuously as an automobile salesman at a salary of $175 per month, using his own car for transportation, and he drew his full pay though occasionally losing some time as before. In February, 1927, Timmons again applied to the New York Life Insurance Co. for policies with disability benefits, stating that he was then in the insurance business, that he had had as his only disease of heart or lungs a severe attack of pneumonia with recovery in 1917, and influenza with recovery in 1924, but had consulted no physician in the past five years otherwise. The medical examination disclosed a heart murmur, but policies were again issued with his age written up three years, but they were not accepted. In April, 1930, he went into the Veterans' Hospital, was then found to have advanced heart trouble, and was no doubt totally and permanently disabled. Then for the first time he made claim under his war risk policy. The medical opinions tended to show that the heart trouble originated in the pus poisoning attending the rheumatic fever and tonsil troubles in the army, but that such heart affections are not necessarily disabling or permanent. One physician thought any work disadvantageous to health in such cases.

■ On this evidence it cannot in reason and justice be found that Timmons was totally and permanently disabled at the lapse of his policy December 31, 1921. He was no doubt totally disabled while he had influenza, pneumonia, and rheumatic fever in the army and while he was recovering immediately after his discharge, but the conditions were not such as to make it reasonably certain that for the rest of his life he would be unable to follow continuously any gainful occupation. He did in fact follow several such occupations consecutively for the next seven years. He was apparently a man of intelligence and business experience, and should have known after working for over a year just prior to

December 31, 1921, whether or not he was totally and permanently disabled. so as to claim under his policy. Instead of claiming under it, he reinstated it and then dropped it, attempting to take instead other insurance which was granted but at a premium rate he was seemingly not willing to pay. Eighteen months later, when he sought compensation, he did not claim under his policy as for a total and permanent disability occurring before its lapse, but sought its reinstatement for the future, expressly affirming that he was not totally and permanently disabled. So late as 1927 or 1928 he was continuously earning $175 per month for twenty-five months. There is no sufficient evidence that all these years he was laboring under a great mistake as to his condition and was working when he was really unable to. His weakness and inability to take violent physical exercise and the occasional loss of time from sickness do not amount to total disability, for he was still able to follow the occupation in which he was engaged. That he could have done so more successfully if his health had been better only shows a partial disability. Considering the intelligence and the experience of the insured, his dealings with his policy, and the history of his actual activities, it cannot be reasonably concluded that he became totally and permanently disabled before his policy lapsed. Lumbra v. United States, 54 S. Ct. 272, 78 L. Ed. ——; White v. United States (C. C. A.) 53 F.(2d) 565.

■■ The report of a government physician of a physical examination of a veteran at the Veterans' Bureau and there filed is evidence, notwithstanding the maker of it is not sworn and cross-examined. There is an exception to the rule against hearsay evidence, because the report is a contemporaneous entry made in the line of duty by a public functionary. Demeter v. United States, 62 App. D. C. 208, 66 F.(2d) 188; Long v. United States (C. C. A.) 59 F.(2d) 602; Sprencel v. United States (C. C. A.) 47 F.(2d) 50L. But unless certified as such under the act of Congress, 28 USCA § 661, or otherwise identified and authenticated, the report cannot be admitted. For lack of authentication the paper offered in this case was properly excluded.

Because the verdict should have been directed for the United States, the judgment is reversed, and the case remanded for further proceedings not inconsistent with this opinion.