## UNITED STATES v. SPAULDING.*
### No. 7137.

Circuit Court of Appeals, Fifth Circuit.

Feb. 1, 1934.

George Earl Hoffman, U. S. Atty., of Pensacola, Fla., and Will G. Beardslee, Sp. Asst. to Atty. Gen., for the United States.

Philip D. Beall, of Pensacola, Fla., for appellee.

Before BRYAN, SIBLEY, and WALK-ER, Circuit Judges.

SIBLEY, Circuit Judge.

 Irah D. Spaulding sued and recovered on a policy of war risk insurance as for a total permanent disability arising before the lapse of his policy on November 30, 1923. On this appeal by the United States the sole error insisted on is the refusal to direct a verdict against the plaintiff. In broad outline the evidence tended to show that Spaulding enlisted in the navy in 1917, and soon became an aviator. In June, 1920, he was taken with severe pains in the lower abdomen. Albumen was found in the urine and many casts, both hyaline blood and cellular, supposed to be due to stone in left ureter but no stone passed. In September there was a return of pain and again in January, 1921. X-ray then showed stone in left ureter. In August on another attack albumen and casts were again found present. He was operated on and discharged from hospital November 7, 1921. A week later he was in an aeroplane crash, receiving severe injuries, especially to his face, teeth, and jaw. A few

*Rehearing denied April 12, 1934.

months later he had developed stomach trouble, his teeth had formed abscesses, and his left antrum became infected. In May, 1922, he was diagnosed as having chronic parenchymatous nephritis, or Bright's disease. He was honorably discharged as unfit for the service in June, 1922, and applied for compensation but did not claim under his insurance policy. He continued to have attacks of pain like kidney colic, and the infected antrum was operated on again in 1923, 1925, and 1927. In 1927 he applied to reinstate his lapsed insurance, but in October, 1928, was examined and classed as a poor risk and as having chronic nephritis with hyaline casts and blood cells in urine. Examination in 1929, 1930, and 1931 showed the same thing and a fallen kidney and kinked ureter. Three physicians for the government, while stating that the hyaline casts, albumen, and blood cells present in urine since 1920 showed chronic nephritis which was incurable, they were of opinion that Spaulding was at no time totally disabled from carrying on work. Spaulding testified that for about nine months after his discharge from the navy he could not work at all, then took vocational training for fourteen months, sold automobiles for about a year in 1924 and 1925, but could not work at it continuously, having to take codeine to relieve severe pains in his back and head which were aggravated by working, and that he was under treatment for them all the time by Dr. Quina, who operated on his antrum in 1922, every day for a year, then three or four times a week for the next two years, and later every other day until 1929. He got $125 per month selling cars in 1925, and worked as a construction superintendent for seven months at $300 per month, and afterwards worked at $200 per month as a superintendent of electrical work for four years, losing about three months in hospital. He was discharged from that employment because unable to put in full time, and has done no work since. Spaulding testifies that he was working to support his wife and two children, although he would get dizzy and have splitting headaches and although doing so was against his doctor's orders and he knew that he was endangering his health thereby. Dr. Quina, who took charge of Spaulding's case on his discharge from the navy, testified that the chronic nephritis was caused by the antrum infection, which he did not think curable, and the kidney disease would ultimately kill him; that he might live a long time by rest treatment, but: "If he engages in any work it will make him die

a little bit sooner. He was working when I treated him, and that was absolutely impairing his health. The nervous energy that he expended in working should have been expended in building up his condition physically, and it is immaterial whether he does hard labor or office work. From my examination and treatment of him, in my opinion at the time I first examined him and since, he has not been capable of continuously carrying on a substantial occupation without injury to his health." Two other physicians who treated him after 1929 testified that the hyaline and cellular casts and albumen in the urine in 1922 showed chronic nephritis existed dating beyond that time, that absolute rest would have been the proper treatment, that mental work was as injurious as physical exercise, and it would certainly impair his health to do any work. A fellow worker of Spaulding's in 1924 and 1925 testified that Spaulding at that time would be away, unable to work, three or four times a month, and· while at work seemed in pain, sometimes doubling up. Hardly a day passed without his complaining of pain in the head. For the period from 1926 to 1929 similar testimony was given by another fellow worker, who also said that Spaulding while at work as superintendent would often have to quit and lie down or be taken home.

If the work record of Spaulding and his long failure to claim under his policy were alone looked to, it would seem that the opinion of the physicians testifying for the defense was correct, and that Spaulding was not totally disabled in 1923 or until 1929. Lumbra v. United States, 54 S. Ct. 272, 78 L. Ed. ——; United States v. Timmons (C. C. A.) 68 F.(2d) 654. But work done under pressure of necessity and when health requires rest does not necessarily disprove total disability at the time. There was evidence in this case which if believed would authorize the jury to conclude that Spaulding in November, 1923, had chronic nephritis and other kidney and head ailments which were permanent and which with a proper regard for his health and continued life required that he cease all work. If so, there was total permanent disability, although in aggravation of his illness and in great pain he continued to work for several years afterwards. We cannot say the court erred in leaving the case to the judgment of the jury.

Judgment affirmed.