## UNITED STATES v. O'DANIEL.
### No. 7500.

Circuit Court of Appeals, Fifth Circuit.
Dec. 8, 1934.

Young M. Smith, Atty., Department of Justice, of Washington, D. C., S. D. Bennett, U. S. Atty., of Beaumont, Tex., and D. Vance Swann, Atty., Veterans' Administration, of Dallas, Tex.

C. A. Matthaei, of Dallas, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Plaintiff, suing in 1931 on a war risk insurance policy, alleged that he is and has been since his discharge in December, 1918, totally and permanently disabled as the result of an assortment of disabilities and inflictions, formidable in name and formidable in fact, if severe enough in onset, to totally disable, if not completely prostrate, an ordinary man.[1]

Defendant joined issue as to the totality, permanence, and time of accrual of plaintiff's disability. Plaintiff thereupon offered testimony, lay and medical, and the record of his army hospital experience, proving, if believed, that he was afflicted substantially as he had alleged. Defendant, relying upon the medical testimony, the army record made at the time of plaintiff's discharge, and statements made by plaintiff in his application for compensation, and in an application for insurance he made to the National American Insurance Company, offered no other evidence.

Plaintiff offered the testimony of six physicians; defendant matched these with six of its own. All of plaintiff's physicians and all of defendant's agreed that he was afflicted with muscular rheumatism, arthritis, and swelling of the joints. All of defendant's physicians who had examined him in 1928 at the army hospital where he had gone for observation in connection with a compensation application testified that he was not totally and permanently disabled. One of plaintiff's physicians, whether through a misunderstanding of the hypothetical question is not clear, stated that plaintiff's condition was permanent, but not totally disabling. All agreed that his arthritis was permanent. One testified that, while his condition when he examined him was totally disabling, it would probably clear up to a condition of partial disability. He based this on the statement of the plaintiff to him that up until six months before he came to the hospital the affliction had been in his feet, and then had gone up to involve his hands and wrists, preventing him entirely from working. Two of plaintiff's physicians were of the opinion that his condition was totally and permanently disabling. One stated that he had been totally and permanently disabled ever since he left the army. Plaintiff's lay testimony, including his own, was very clear and positive that, though he had done some work from time to time, he had not been able to do it with any substantial continuity; that he had not, in short, been able, since his discharge, to make his living by working. His brother, George O'Daniel, who, like plaintiff, is a painter, testified: "He worked regularly and made a living for himself before he went to the army. He has not worked regularly and made a living for himself since the World War. He had swollen joints, was lame, complained about his feet a great deal and at times he would have it so bad that he would have fever and would have to go to bed." Plaintiff testified fully and freely that he had been able to do some work until about 1928 when the arthritis attacked his hands too, but that he had never, since he came out of the army, been able to work with any substantial continuity, and that he had not been able to make a living out of it. He testified to having taken medical treatment and having consulted physicians, and that, while he had never stopped trying to work, he had not been able to work regular-

---

[1] Pteryguium of left eye; valvular cardiac disease; chronic arthritis; prostatic hypertrophy; chronic prostatitis; hemorrhoids; general weakness; rheumatism; general disability; and general inability.

ly, and could not hold a job. He testified, and no one disputed him: "I have not earned a substantial wage regularly since I got out of the army. I have never worked continuously." Defendant, on his cross-examination, confronted him with the statement he had made in his claim for compensation, "I have not filed claim for the benefits afforded by the Government prior to this date for the reason that I did not think it right to file claim as long as I was able to work," and the further statement in it, "My prewar occupation was a painter and average monthly earnings $150, and my postwar occupation was a painter and average monthly earnings $75." Plaintiff in reply stated that he did not remember having made the statements, and that he had not intended or meant to say that he had made $75 a month since the war, but that that was his signature to the application. As to the application he made to the American National Insurance Company in which appeared the statement that he had not suffered from any disease or illness in the last ten years, he said that, if it appeared in there, that was not true, and as to his statement to the doctor and in the application that he had worked up until within six months before 1928 when the rheumatism attacked his hands, it was true that he had worked up to that time but only intermittently, and that he had not been able to work continuously; that probably he had worked a month and a half in each year. He testified that he tried to work when he could, but that he had not been able to work with any regularity. As to his discharge record showing no disability, he testified he wanted his discharge from the army and that he did not want to make any complaint that would keep him from getting it. His army record showed that he was hospitalized for a considerable part of the time for acute arthritis, hemorrhoids, and many other troubles.

Defendant offered no witness to contradict any of the witnesses who testified for plaintiff that he had not worked regularly, and could not do so, nor did it offer any witnesses to prove that he had worked.

There was thus developed a typical case for the jury, one in which what each said and did must be weighed in the balance of the circumstances under which they said and did it, including motives, interests, and points of view, in order to determine where the truth most probably lay. In such a weighing it was for the jury, not the court, to hold the balances, to judge the weight to be given to this and to that piece of evidence, and to finally say whether the balance fell on plaintiff's side. It was for the jury, not the court, to determine in this case whether plaintiff, crippled as he undoubtedly has been, has been able with reasonable continuity, to follow a substantially gainful occupation through all the long and weary years since his discharge. It was for them to say whether he has been able to make a living by working, and, if he has, whether that living has been gained at the cost of pain and suffering more heavy than he was called upon in law to bear. These contracts, providing as they do for supplementing to the extent of their monthly payments, that living which the disability has prevented the assured from making, United States v. Martin (C. C. A.) 54 F.(2d) 554, deal not with mechanical, but with human, strivings and cessations, and where, as here, there is evidence to make the issue, the jury must say, if humanly speaking, plaintiff has been totally and permanently disabled as he claims. Cf. Rickey v. New York Life Ins. Co. (Mo. App.) 71 S.W.(2d) 88; Foglesong v. Modern Brotherhood of America, 121 Mo. App. 548, 97 S. W. 240, 241.[2]

The motion for directed verdict was rightly refused. The judgment is affirmed.

[2] In the Foglesong Case it was said: "But we are unwilling to adopt such a doctrine, the effect of which would be, practically, to reduce all such contracts to nullities, and to make them the instruments of extracting dues from policy holders without creating any liability on the part of the insurers. Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing and without sight following a vocation—some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoestrings or lead pencils, or follow some similar calling; in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties."