**ADAMS v. UNITED STATES.**

No. 7339.

Circuit Court of Appeals, Seventh Circuit.

Dec. 13, 1940.

Stephen A. Cross, of Chicago, Ill., for appellant.

Arthur Roe, of East St. Louis, Ill., Wm. M. Lytle, of Chicago, Ill., and Julius C. Martin and Wilbur C. Pickett, both of Washington, D. C., for appellee.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This action was brought by the plaintiff to recover on a policy of war risk insurance issued to Adams, who was in the United States Army from May 17, 1917, to January 19, 1920, when he was honorably discharged. The case was tried to a jury. At the close of all the evidence the defendant moved for a directed verdict on the ground that there was no substantial evidence to support a finding for the plaintiff. The District Court reserved its ruling and submitted the case to the jury. The jury returned a verdict for the plaintiff, finding that he became totally and permanently disabled on January 10, 1920. Thereafter defendant moved for judgment notwithstanding the verdict, which the trial court granted, set aside the verdict, dismissed the complaint and rendered judgment for costs against the plaintiff. To reverse the judgment plaintiff appeals.

The question presented is whether the evidence was such as to justify the court's ruling as a matter of law that there was lack of substantial evidence that plaintiff was totally and permanently disabled while his insurance was in force.

In the examination of this question we are not to weigh the evidence and what our verdict would have been as jurymen is immaterial. It is likewise of no importance that we may be of the opinion that the evidence preponderates in favor of the defendant, for the reason that the responsibility of weighing the facts lies with the jury. United States v. Dudley, 9 Cir., 64 F.2d 743.

In our case we must assume as established all the facts that the evidence supporting plaintiff's claim reasonably tends to prove, and there should be drawn in his favor all the inferences fairly deducible from such facts. Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492, and Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720.

In an action of this character the plaintiff must show (1) that before the policy lapsed he was totally disabled, i. e., that his disability was of such a character that he was incapable of pursuing with reasonable regularity any substantially gainful occupation; and (2) that this disability was of a permanent character, i. e., that it was based upon conditions which rendered it reasonably certain at the time that it would continue throughout the life of the insured. United States v. Diehl, 4 Cir., 62 F.2d 343 and Eggen v. United States, 8 Cir., 58 F.2d 616.

The evidence introduced and relied upon by plaintiff tended to prove that at the date of his enlistment he was 24 years of age, in good health, and had been employed as a railroad brakeman. Upon enlistment he was sent to Brownsville, Texas and there engaged in border patrol work. While at Brownsville, undergoing gas training in a gas chamber in June, 1918, he was gassed, compelled to leave the chamber and thereafter suffered from pain in his lungs. He was confined in an army hospital, then

ordered to the United States Hospital at Fort Bayard, New Mexico, where he remained for 18 months until December 12, 1919, on which date a Board of Army Medical Officers recommended his discharge from service on account of "active pulmonary tuberculosis" involving both upper lobes. Upon his discharge on January 19, 1920, he retired to his father's farm at Marion, Illinois, and there was treated by physicians who prescribed light exercise with afternoon rests. On February 24, 1920 a physical examination disclosed "chronic bronchitis slight," and on September 16 his disability was diagnosed as "pulmonary tuberculosis, quiescent."

In May 1921 while at the Hines Hospital, he was examined and his illness diagnosed as "pulmonary tuberculosis, moderately advanced, active." Between that date and the trial of this case on November 29, 1939, numerous other physical examinations were made of plaintiff and diagnosed as follows:

| | |
|---|---|
| May 10, 1921. | Pulmonary tuberculosis, moderately advanced, Rii Li, active, training not feasible. |
| October 18, 1921. | Pulmonary tuberculosis, chronic, quiescent. |
| December 28, 1923. | Pulmonary tuberculosis, moderately advanced. |
| March 24, 1924. | Pulmonary tuberculosis, active, moderately advanced. |
| April 3, 1925. | Pulmonary tuberculosis, moderately advanced. |
| October 14, 1925. | Chronic pulmonary tuberculosis, moderately advanced, active. |
| January 23, 1928. | Pulmonary tuberculosis, chronic, advanced, low grade activity. |
| October 26, 1928. | Pulmonary tuberculosis, chronic, moderately advanced, active. |
| February 27, 1931. | Pulmonary tuberculosis, chronic, moderately advanced, active. |
| March 3, 1933. | Chronic pulmonary tuberculosis, moderately advanced, active. |
| April 26, 1935. | Chronic pulmonary tuberculosis, moderately advanced, active. |
| December 17, 1935. | Chronic pulmonary tuberculosis, moderately advanced, inactive. |
| June 12, 1936. | Pulmonary tuberculosis, chronic, active. |

In November, 1939, a chest specialist made an examination of plaintiff and testified that "the rales and moisture in the upper part of the chest were suggestive of active tuberculosis" but admitted that moisture may come from bronchitis.

There was also testimony to the effect that plaintiff never had regular employment; that at all times he observed all the instructions imparted to him by physicians concerning his illness; that during these years he did light chores around the house such as chopping wood and working an

hour or so in the garden; that such effort left him in a weakened condition; and that he was compelled to lie down.

There was evidence on behalf of the defendant that in October, 1939, the tuberculosis was healed, with no evidence of activity or any other condition that would prevent plaintiff from doing any kind of work.

In cases such as this, the issue is the existence of total permanent disability during the life of the insurance policy, and of course the totality and permanence of the insured's disability is dependent on the facts and circumstances of each particular case. The real test is "was the plaintiff able to engage with reasonable regularity in a substantially gainful occupation" and the answer to that question does not depend on medical testimony alone, but upon all the evidence in the case. Lumbra v. United States, supra; United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617; Hanagan v. United States, 7 Cir., 57 F.2d 860; and United States v. Hill, 9 Cir., 61 F.2d 651.

It has been held that one who has a serious and incurable ailment for which rest is the recognized treatment, and which will be aggravated by work, motion or movement, may nevertheless be totally and permanently disabled, United States v. Brown, 10 Cir., 72 F.2d 608, 610, but the mere fact of his not working is not conclusive of his disability. United States v. Suomy, 9 Cir., 70 F.2d 542, 544.

Tuberculosis is a progressive disease and in its initial stage often responds to proper treatment, which arrests the progress of the disease and leaves the victim with many years of useful life under favorable conditions. On the other hand, many cases are incurable from the start, resisting the most enlightened medical treatment. Here we are confronted with a case where, on a date when the policy was in force, the plaintiff was suffering from "active pulmonary tuberculosis." Upon being discharged from the service, he retires to his father's farm and is treated by physicians, who prescribe light exercise with rests. Thereafter he has no regular employment and is able only to perform light chores, and at all times observes all the instructions imparted to him by physicians concerning his illness. Upon the facts thus appearing we think it was for the jury

to determine whether plaintiff's disability was of such a character that he was incapable of pursuing with reasonable continuity a substantially gainful occupation and whether the disability was of a permanent character, United States v. O'Daniel, 5 Cir., 73 F.2d 886. We conclude that the court erred in entering the judgment notwithstanding the verdict.

■ It seems well at this time to refer to the opinion of Judge Lurton in Mt. Adams & E. P. Inclined R. Co. v. Lowery, 6 Cir., 74 F. 463, frequently cited on the question as to the power and duty of a court to direct a verdict. It was there said (74 F. page 476): "It seems to us to follow, from both reason and authority, that there is a difference between the legal discretion of the court to set aside a verdict as against the weight of evidence, and that obligation which the court has to withdraw a case from the jury, or direct a verdict, for insufficiency of evidence. In the latter case it must be so insufficient in fact as to be insufficient in law; in the former case it is merely insufficient in fact, and it may be either insufficient in law, or may have more weight, and not enough to justify the court, in exercising the control which the law gives it to prevent unjust verdicts, to allow a verdict to stand. * * * We do not think, therefore, that it is a proper test of whether the court should direct a verdict, that the court, on weighing the evidence, would, upon motion, grant a new trial. A judge might, under some circumstances, grant one new trial and refuse a second, or grant a second and refuse a third. In passing upon such motions he is necessarily required to weigh the evidence, that he may determine whether the verdict was one which might reasonably have been reached. But, in passing upon a motion to direct a verdict, his functions are altogether different. In the latter case we think he cannot properly undertake to weigh the evidence. His duty is to take that view of the evidence most favorable to the party against whom it is moved to direct a verdict, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether or not, under the law, a verdict might be found for the party having the onus. If not, he should, upon the ground that the evidence is insufficient in law, direct a verdict against that party." See also Montgomery Ward & Co. v. Duncan, 61 S. Ct. 189, 85 L.Ed. ——, decided by the Supreme Court of the United States on December 9, 1940.

The judgment of the District Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.